### WHEELING & L. E. R. CO. et al. v. CARPENTER et al.

(Circuit Court of Appeals, Sixth Circuit. April 9, 1920.)

No. 3350.

1. **Corporations** ⊚⟳479—Where mortgage secured two classes of liens, holders of inferior lien held entitled to enforce collateral security given to secure first lien.

　　Where a coal company issued two series of bonds secured by the same mortgage, the first being superior in lien, a contemporaneous contract by a third party to contribute to payment of the first series *held* to be one for the direct benefit of holders of the second, which they had the right to enforce, even after foreclosure of the mortgage had resulted in payment of the first series, leaving the second unpaid.

2. **Judgment** ⊚⟳585(3)—Not bar to second suit on different cause of action.

　　A decree adjudging that a railroad company was not liable for a deficiency judgment rendered against a coal company after foreclosure sale of its property, on the ground of its control of the coal company, *held* not a bar to a subsequent suit to charge the railroad company with liability on a prior contract to contribute to payment of a part of the mortgage debt.

3. **Election of remedies** ⊚⟳11—Attempt to enforce unavailable remedy not an election.

　　One is not estopped from pursuing a remedy that he is entitled to merely because of his endeavor to avail himself of a remedy that he was not entitled to.

Appeal from the District Court of the United States for the Northern District of Ohio; D. C. Westenhaver, Judge.

Suit in equity by E. E. Carpenter, Franklin Leonard, Jr., and Joseph T. McCaddon against Wheeling & Lake Erie Railroad Company and

⊚⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

W. H. Duncan, its receiver. Decree for complainants, and defendants appeal. Affirmed.

See, also, 218 Fed. 273, 134 C. C. A. 69; 235 Fed. 17, 148 C. C. A. 511; 250 Fed. 668, 163 C. C. A. 14.

W. M. Duncan, of Cleveland, Ohio, for appellants.

D. A. Holmes, of New York City, for appellees.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. This is the fourth appearance of this case in this court. It is an appeal from a decree of the District Court made July 18, 1919, pursuant to the mandate of this court under its opinion reported in 218 Fed. 273, 134 C. C. A. 69, et seq. In that case, known as the first Carpenter Case, the now important facts were substantially these: The Wheeling & Lake Erie Railway Company owned a controlling interest in the Wheeling, Lake Erie & Pittsburgh Coal Company. The railroad company and the coal company went into receivership. A plan of reorganization was carried out by which the property of the coal company, acquired through foreclosure sale by a committee of its bondholders, was transferred to a new company, organized by the railroad company, which issued two classes of obligations secured by one mortgage: (a) Prior lien obligations, so called, in the amount of $200,000, payable within 10 years, for taking up receivers' certificates and other indebtedness prior in lien to the general bonds; and (b) general bonds aggregating $634,500, issued to the old bondholders to the amount of 75 per cent. of their former holdings.

The coal properties were leased for 10 years, with requirement that the lessee mine not less than a stipulated amount of coal per year and pay a fixed royalty thereon. The new railroad company (one of the present appellants) agreed with the coal company to contribute a stated sum per ton on all coal shipped by the latter, to be applied to the payment of the prior lien obligations until both interest and principal should be discharged. The mortgage provided that the royalties under the lease should be applied to the payment of interest on the bonds and the creating of a sinking fund for payment of the principal, any surplus to be applied to the prior lien obligations. Had the minimum quantity of coal been mined, the coal company would have had sufficient income to meet all such requirements. After the first two years of the lease, much less than the required minimum was mined, because of the railroad company's failure to furnish sufficient cars for moving the coal. The present appellees, who were members of the bondholders' committee, on behalf of the general mortgage bondholders, brought suit in equity to compel the railroad company to account for the amount due from it under its so-called contribution contract, and to pay the same to the mortgage trustee, for application on the prior lien obligations. The decree of the District Court required the railroad company to pay off and retire, at or before maturity, all prior lien obligations, transferring to the original receivership and foreclosure suit the question whether such payment should take priority over the claims of the railroad's other creditors. This court held that the

railroad company was not obliged by contract to pay off the prior lien obligations, but was under an implied obligation to furnish cars and transport the coal to be mined; that it was liable for the damage done to the general bondholders by such failure to furnish cars; and directed the District Court to compute the damage and render decree accordingly. By the decree here appealed from, made pursuant to this court's mandate, the District Court found the railroad company liable to pay appellees, on the basis of· computation set forth in the opinion of this court before referred to, $195,000 (that being the sum stipulated between the parties as the amount accruing on such basis), together with interest thereon—the amount to be brought into court for such further distribution as might be necessary. The defenses urged against this recovery require further brief statement of facts.

While the appeal in the first Carpenter Case was pending, plantiffs filed a cross-bill in the receivership and foreclosure suit, asserting priority of the claims made for breach of the contribution agreement, as well as personal liability of the railroad company for such deficiency in payment of general mortgage bonds as should result from foreclosure. The decree of the District Court denied priority to the claims under the contribution agreement, but allowed them pro rata with other general creditors of the railroad company, so far as such claims should be affirmed by this court. The question of liability for deficiency in payment of general bonds was reserved for further consideration. This court affirmed the decree of the District Court, without prejudice to such conclusion as that court should reach on that reserved question. This is known as the second Carpenter Case, 235 Fed. 17–32, 148 C. C. A. 511.

On foreclosure of the coal company mortgage the property, which, on April 26, 1915, was bid in by plaintiffs' counsel for the benefit of the general bondholders, brought substantially enough only to pay the prior lien obligations, thus resulting in a deficiency judgment (April 27, 1915) against the coal company for upwards of $619,000. On plaintiffs' petition in the receivership and foreclosure suit this deficiency judgment was allowed as a general debt of the railroad company, to be paid pro rata with other creditors of that company. On appeal this court reversed the decision of the District Court, holding the general bonds to be a liability of the coal company alone. This is known as the third Carpenter Case, 250 Fed. 668, 163 C. C. A. 14. Thereupon the accounting directed by the mandate in the first Carpenter Case was had, forming the subject-matter of the present appeal.

[1] The first defense is that "the prior lien obligations, for the benefit of which the original bill was filed, were paid and retired April 27, 1915, and no further liability, either direct or indirect, exists in respect thereto." The argument is, in substance, that the railroad company's liability under the contribution contract was expressly limited to, and was to expire with, the discharge of the prior lien obligations; that the mortgage trustee foreclosed at the request of the owners of those obligations, and that as the result of the sale thereunder those obligations were paid and canceled; also that in the first Carpenter suit appellees sued merely in a representative capacity, in the

place of the trustee named in the contribution contract, and thus had no interest in the award ordered in that suit unless by subrogation to the rights of the coal company or the prior lien obligation holders— to which subrogation they are asserted not to be entitled, not only because a right thereto was not pleaded, but because the trustee under the contribution contract has no right now to receive payment, and for the further reason that the right of subrogation was waived by plaintiff's participation in the foreclosure and permitting the proceeds thereof to be applied to the payment of the prior lien obligations.

We think this contention destitute of merit. It loses sight of the real situation. The contribution contract was made to insure payment of the prior lien obligations. The general bondholders were directly interested in such payment for the protection of their own securities. The recovery here under review was essentially for their benefit and was so intended. The prior lien holders had no power to prevent or cancel such recovery except by canceling their own obligations. This they have not done. These obligations have been paid from a fund which, but for these prior obligations, would have been devoted to plaintiffs' general bonds. Appellees have, for the protection of the general bondholders, provided the funds by which these prior obligations have been paid. The recovery under review amounts to an award of the damages which appellees, as representing the general bondholders, have thereby suffered. The net result is what the first Carpenter suit was intended ultimately to accomplish. As respects the question of subrogation, it seems enough to say that the general bondholders were in equity the beneficiaries of the trust created by the contribution contract, and that so far as there was any call for subrogation, to a right with respect to which plaintiffs were all the time the substantial beneficiaries, the action of this court in directing the award of damages practically effected subrogation.

[2] The second defense is that the action of this court in the third Carpenter Case, which denied liability of the railroad company for the deficiency judgment, is an adjudication of all matters in dispute between the parties and a bar to the further prosecution of this action. We think this defense plainly untenable. The present suit is not on the same claim or demand as that which was the subject-matter of the third Carpenter suit. This suit is to recover damages for breach merely of the contribution agreement. That suit was to establish liability of the railroad company for the entire deficiency judgment, on the theory that the coal company was merely an adjunct of the railroad company. The subject-matter of the instant suit was in fact neither litigated nor adjudicated in the third Carpenter suit; and we find nothing to indicate that the issues in that suit were intended or understood to embrace the question of liability by virtue of the contribution agreement, which liability, indeed, had been already established by the decree of this court at the time the petition in the third Carpenter Case was filed. The subject-matter of the present suit was, to all intents and purposes, held in abeyance pending prosecution of the third Carpenter suit; and neither the District Court nor this court decided, in the latter case, anything at all inconsistent with what was decided by

this court in the first suit and by the District Court by the decree now under consideration. It is not important that in the pleadings in each case the railroad company's domination of the coal company was stressed. Had the theory of the third Carpenter suit been sustained, plaintiffs would have had no occasion to resort to an enforcement of the decision in the first suit. Since the final rejection of the theory on which the third Carpenter suit was based, plaintiffs have simply enforced the previously adjudicated right to damages on account of the breach of the contribution agreement.

[3] The third defense is that plaintiffs, by participating with knowledge of the mandate in the first Carpenter suit, in the plan which resulted in the sale of the coal properties, which were not sufficient to discharge the prior lien obligations, by obtaining a deficiency judgment and by using it as basis for a claim against the railroad company, elected a remedy inconsistent with that now invoked, and so have waived the later remedy. In our opinion the case involves no question of election or inconsistent remedies. In the first place, the two remedies in question are not inconsistent. In the second place, it is fundamental that one is not estopped from pursuing a remedy that he is entitled to merely because of his endeavor to avail himself of a remedy that he was never entitled to. Brown v. Fletcher (C. C. A. 6) 182 Fed. 970, 972.

The decree of the District Court is affirmed.

⊛═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes